ZINA KAUFN SWIDEN, Respondent, v. ALEX ZANDER HASN, Aleck Zander Hassan, Alik Zander Hasen, Alix Zander Hasen, Albert Hones, M. Jones, Ashley State Bank, J. H. Allen & Company, J. H. Wishek, The Bankers Loan Company, Esther Skorish and H. Skorish, Copartners as Skorish & Sons, County of McIntosh, State of North Dakota, and All Other Persons Unknown Claiming Any Estate or Interest in or Lien or Encumbrance upon the Property Described in the Complaint, Appellants.

(175 N. W. 213.)

**Homestead — effect of fraud in releasing homestead right and in obtaining mortgage.**

1. In an action to determine adverse claims where it appears that the widow was entitled to a homestead estate in the homestead of her deceased husband, and that she, an Assyrian, unacquainted with the language, customs, and law of this country, not knowing her legal rights in the homestead, was induced to execute a mortgage of such land as security for the payment of claims against the estate of her deceased husband as well as against herself by her advisers, occupying a confidential relation towards her, also Assyrians by birth, having experience with the language, customs, and even the law of this country; and where, further, it appears from the record that nothing whatever was received by the widow from the estate of her husband, and no probate thereof had, and that her advisers, the appellants, exercised a proprietary interest in the homestead so mortgaged, receiving the rents and profits and disposing of the buildings thereupon,—it is *held* that the findings of the trial court to the effect that such mortgage was secured by fraud, deception, and overreaching are sustained upon the record.

**Homestead — rights of wife in property of deceased husband.**

2. Under the laws of North Dakota, the homestead estate of the deceased husband descends to the surviving wife, when there are no children, as to the entire fee thereof, free from any claims existing against such estate excepting those specifically prescribed by statute.

Opinion filed October 19, 1919.

Action in District Court, McIntosh County, to determine adverse claims.

From a judgment in favor of the plaintiff the defendants Hasn and Jones have appealed and demand a trial *de novo*.

Affirmed.

*Franz Shubeck* and *W. S. Lauder,* for appellants.

It is not necessary that the person signing actually himself affix his signature. If he simply touch the pen or even the hand of another, and the cross is made by his direction or with his acquiescence, the signing is sufficient. Bartlett v. Drake, 100 Mass. 175, 1 Am. Rep. 101; Gardner v. Gardner, 52 Am. Dec. 740; Northwestern Loan & Bkg. Co. v. Jonasen, 79 N. W. 840; Conlan v. Grace, 36 Minn. 270, 30 N. W. 880; Harris v. Harris, 59 Cal. 620; Lewis v. Watson, 22 L.R.A. 297.

The four facts essential to a proper acknowledgment are set forth in Cannon v. Daming, 3 S. D. 421, 53 N. W. 863.

To overthrow an acknowledgment instrument, fair on its face, the evidence must be "so full and satisfactory to convince the mind that the certificate is false or forged." Griffin v. Griffin, 125 Ill. 43, 17 N. E. 785; Marston v. Brittenham, 76 Ill. 611.

"The certificate makes a prima facie case; that is the least that can be claimed for it." Dock Co. v. Russell, 68 Ill. 438; Borland v. Volrath, 33 Iowa, 130; Blarson v. Ford, 108 Ill. 26.

"Good faith will be persumed on the part of all persons and officers in the execution, acknowledgment, filing, and recording of written instruments." Laws 1913, § 5580.

Courts have, with great uniformity, in this class of cases (actions to impeach written instruments) required the proof that should destroy the recitals in a solemn instrument to be clear, satisfactory, and specific, and of such a character as to leave in the mind of the chancellor no hesitation or substantial doubt. McGuin v. Lee, 10 N. D. 169; Larson v. Duitel (S. D.) 85 N. W. 1008; Droge Elev. Co. v. Brown Co. (Iowa) 151 N. W. 1048; Punch v. Williams, 34 Wis. 268. See also Maxwell Land Grant Case, 121 U. S. 380, 30 L. ed. 949, 7 Sup. Ct. Rep. 1015; Veazie v. Williams, 8 How. 134–157, 12 L. ed. 1018; United States v. San Jacinto Tin. Co. 125 U. S. 273–300; 8 Sup. Ct. Rep. 850, 31 L. ed. 747, and other numerous notations cited.

*John D. Lynch, Dan R. Jones,* and *A. G. Divet,* for respondents.

Occupying this position of confidence he (Jones) could not deal with her to his own advantage without not only refraining from deceiving her, but further without affirmatively advising her of what was and was not to her best interest. He must guard her interests in preference to his own. Comp. Laws 1913, §§ 6275 and 6281; Field's Civ. Code, §§1171 and 1177; Liland v. Tweto, 19 N. D. 551; Gardner v. Ogden, 22 N. Y. 333; McFadden v. Jenkins (N. D.) 169 N. W. 151; King v. White (Ala.) 24 So. 710; Thomas v. Whitney (Ill.) 57 N. E. 808; 2 Pom. Eq. Jur. §§ 948, 953, 956 and cases cited.

On examination Jones would not answer direct, or give details. This examination went to the credibility of the witness; he withheld certain evidence and the presumption is that if the evidence had been given it would have been adverse and tend to lessen his credibility. Jones, Ev. Blue Book, § 19; Cole v. Lake Shore & C. R. Co. (Mich.) 54 N. W. 638; Robinson v. Life Ins. Co. 144 Fed. 1005; Manhard & C. Co. v. Rothschild (Mich.) 80 N. W. 707; Wigmore, Ev. § 285; Wyldes v. Patterson, 31 N. D. 282; Nelson v. Hall (Mo.) 79 S. W. 500; McDonough v. O'Niell, 113 Mass. 92; Smith v. Tosini (S. D.) 48 N. W. 299.

The rule is a trustee under such circumstances must affirmatively account, and, failing, the most possible liberality will be indulged in in construing the evidence, and he will be held liable for the largest amount that may under the evidence be in his hands. Blanvelt v. Ackerman, 23 N. J. Eq. 495; Irre Gaston Twist, 35 N. J. Eq. 6; Landis v. Scott, 32 Pa. 495; McCulloch v. Tompkins (N. J.) 49 Atl. 474; Perrin v. Lepper (Mich.) 40 N. W. 859; Biddle Purchasing Co. v. Snyder, 96 N. Y. Supp. 356; Merritt v. Merritt, 67 N. Y. Supp. 188.

Nothing is deemed a consideration for a contract that is not so intended by the parties. Fire Ins. Asso. v. Wickham, 141 U. S. 564, 35 L. ed. 860; Philpot v. Gruninger, 81 U. S. 570, 20 L. ed. 743; Kilpatrick v. Newloud, 16 Pa. 117; Ellis v. Clark, 110 Mass. 389.

Mere casual transactions not in the regular course of the party's business are not provable by the books of account. 2 Enc. Ev. 625 and 626.

Cash items are not so provable. 2 Enc. Ev. 645–648; Lyman v. Beekle, 7 N. W. 673; Schafer v. McCracken, 58 N. W. 910; Smith v. Rentz, 15 L.R.A. 171; Prince v. Smith, 4 Mass. 454.

Items of money paid out on orders are not so provable. Branning
v. Vorhees, 14 N. J. L. 590; 2 Enc. Ev. 620 and 648.

BRONSON, J. This is an action to determine adverse claims. The
defendants, Hasn and Jones, appeal from a judgment of the trial court
quieting title in the land involved and declaring the mortgage of such
defendants to be not a lien upon such land. A trial *de novo* is demand-
ed in this court. The facts substantially are as follows:

On June 2, 1909, the plaintiff, the respondent herein, executed a
mortgage to the appellants upon 160 acres of land in McIntosh county
to secure an indebtedness of $1,175. This mortgage contained a mis-
description of the land involved. This mortgage was later foreclosed
by action in 1914, attempted service being secured by publication. The
judgment rendered in such foreclosure action was later vacated in
March, 1917, by reason of jurisdictional defects. In August, 1917,
action again was instituted to foreclose such mortgage by the appellants
herein, and, thereafter, in October, 1917, this action herein to determine
adverse claims was instituted; the appellants by separate answer set
up the mortgage in question as a lien upon the land; to such answer,
the respondents replied, setting up fraud, deceit, misrepresentation,
lack of consideration, and abuse of confidential relations in avoidance
of such mortgage. At the trial commencing June 5, 1918, it was stipu-
lated that the evidence taken might apply to both of said actions; that
the actions, however, should not be consolidated, but as separate judg-
ment should be entered in each.

The land in question was homesteaded by the deceased husband and
final proof made shortly before his death. After his death some con-
test was made concerning this final proof, but subsequently, neverthe-
less, a governmental patent was issued upon the final proof of the de-
ceased husband. The parties before this court are Assyrians. The
respondent and her deceased husband were married in Assyria and
came from some town therein known as Karoun. For sometime prior
to his death the deceased husband had been afflicted with tuberculosis.
He sent for his wife then in Assyria. She arrived some time in De-
cember, 1908. Thereafter she lived on the homestead with her husband
excepting such times as he was away taking medical treatment at va-
rious places until the time of his death from his affliction, during the

last days of May, 1909. Immediately, after the funeral of the deceased husband, the appellants secured this mortgage from the respondent as security for the payment of claims against the deceased husband for moneys advanced in making proof on the land, for moneys borrowed, traveling expenses of the wife paid, funeral expenses, and also to cover other claims of creditors against the deceased. Trouble apparently soon arose between the relatives of the deceased husband, particularly his brother and the respondent. In accordance with her testimony, not only was this mortgage secured from her, but also all of the personal property of the deceased husband was taken away from her. She was driven from home and the home of her brother-in-law. She fled into the hills; there she was picked up by one Swiden and subsequently some two months thereafter married the brother of her new protector. From the record apparently she has never received anything from the estate of her deceased husband, and apparently there has never been any probate thereof.

The trial court, in its findings, in effect determined that the signature of the respondent to the mortgage in question was induced by fraud, deception, misrepresentation, and overreaching of the appellants, in abuse of confidential relations existing and without consideration, reciting in detail the particular acts and circumstances which gave rise to such fraud and deception.

Ths appellants herein have challenged these findings principally upon the grounds that the record discloses that the respondent, with full understanding, executed the notes and mortgages in question, based upon a valid consideration for the settlement of the debts of her deceased husband as well as her own debts, properly chargeable to her as the wife of the deceased and personally. That furthermore upon principles of estoppel and laches the court erred in setting aside this mortgage after it had been unquestioned for some seven years. The principal controversy concerning the exercise of fraud, deception, or overreaching centers around the circumstances attending the execution of the mortgage. The record is voluminous; no good purpose will be served in trying to recite in detail the conflicting contentions of the parties. There is evidence in the record to support the findings of the trial court to the effect that this respondent, an Assyrian by birth, unacquainted with either the language, the customs, or laws of this country, practically immediately

after the funeral of her husband was induced to sign this mortgage to cover the claims of her deceased husband through the activities of the appellants, who thereafter assumed proprietary rights in the homestead of the deceased husband, renting the land from year to year, receiving the proceeds thereof, and even selling and disposing of the buildings thereupon. The appellants were engaged in business at Ashley, North Dakota. They were Assyrians, but they had been in this country sufficiently long to have become not only fairly shrewd business men, but also to a certain extent at least acquainted with the language, the customs, and even the law of this country. They consulted a lawyer concerning their right to take a mortgage from this respondent. There appears nothing in the testimony of any advice given by these appellants to this respondent of her rights in the estate of her deceased husband. The respondent was here in a country foreign to her, without money or friends. The appellants occupied a confidential relation toward her. This relation necessitated the exercise of the highest good faith, to treat fairly the respondent in business transactions. After a review of the entire record, we are satisfied that the findings of the trial court should not be disturbed. In this case, particularly, where much of the evidence was taken through an interpreter the trial court was in a much better position to visualize the conduct and actions of the parties concerned as they appeared before the court than this court is upon the cold record. The appellants contend that they befriended the deceased husband, assisting him in securing final proof of the land with money and legal advice; aided him in his last sickness by money and direct attention; sent for the respondent, and furnished money for her transportation, and otherwise assisted and aided the respondent after her arrival. Even though this be true, this furnished no occasion, and certainly did not afford any excuse, for the appellants to act toward the respondent otherwise than in her interest. These appellants knew or easily could have ascertained, acquainted as they were with American customs and law and knowing how to secure legal advice, that the respondent as the widow of the deceased was entitled to an interest in this land, in fact the entire interest thereof by statute; and that a method was provided, not by the invention of the parties, but by legal proceedings through the county court, to adjust, determine, and settle all of the claims against the estate of the deceased. The appellants knew,

or were in a position to know from their experience, that this homestead of the deceased by statute belonged absolutely to the respondent, free from any claims of creditors of the deceased husband. Comp. Laws 1913, §§ 5607, 5631, 5743. See Calmer v. Calmer, 15 N. D. 120, 124, 106 N. W. 684. There is ample evidence in the record to warrant the finding of the trial court that the respondent was ignorant of this knowledge, and that the appellants, taking advantage of her condition, situation, and experience, did secure by deceptive practices the execution of this mortgage to cover claims and demands that then were not legally and could not be made legally, under statute, a charge upon this land. We are further satisfied upon this record that the delay of the respondent in instituting this action, inexperienced in and unacquainted as she was with the language and institutions of this country, has not subjected her to the principles of estoppel and laches asserted by the appellants. The judgment of the trial court should be in all things affirmed. It is so ordered.